UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00001-GNS

GARY LARUE                                                                                      PLAINTIFF

v.

VOLKSWAGEN GROUP
OF AMERICA, INC. et al.                                                                   DEFENDANTS

**ORDER**

This matter is before the Court on Plaintiff's Motion to Remand (DN 9), Defendants' Motion for Leave to File Sur-Reply (DN 18), and Defendants' Motion for Oral Argument (DN 17). For the reasons outlined below, the motion to remand is **GRANTED** but the request for attorneys' fees and costs is **DENIED**; the motion for leave to file is **GRANTED**; and the motion for oral argument is **DENIED**.

I. **STATEMENT OF FACTS AND CLAIMS**

On October 16, 2013, Plaintiff Gary Larue ("Larue") was seriously injured in a one-car accident in which his 2002 Volkswagen Golf left the roadway, crossed over both lanes of traffic, and rolled at least one time before coming to a stop in a field. (Notice Removal Ex. 1, at 360, DN 1-1). As a result of the accident, Larue is an incomplete quadriplegic. (Notice Removal Ex. 1, at 360).

On October 14, 2014, Larue filed suit in Warren Circuit Court against Volkswagen Group of America, Inc.; Volkswagen, A.G., and Volkswagen do Brasil Limitada alleging design defect and negligence claims relating to the 2002 Volkswagen Golf.[1] (Notice Removal Ex. 1, at 360-64). Larue also named various individuals employed by the Kentucky Transportation Cabinet ("KTC Defendants") asserting claims of negligence and strict liability against them in their individual and official capacities. (Notice Removal Ex. 1, at 364-68). Approximately a month before trial was to take place in state court, on January 3, 2017, VW Defendants removed the action to federal court pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of fraudulent joinder. (Pl.'s Mot. Remand Ex. 4, at 1, DN 9-6; Notice Removal 5-7, DN 1). Larue has since moved to remand this case to state court. (Pl.'s Mot. Remand, DN 9).

## II.   DISCUSSION

### A.   Plaintiff's Motion to Remand[2]

Larue moves to remand this matter to state court on the basis that the removal was untimely under 28 U.S.C. § 1446(c) and requests an award of attorneys' fees and costs for improper removal. (Pl.'s Mem. Supp. Mot. Remand 2-10, DN 9-2). In general, "[n]othing is to be more jealously guarded by a court than its jurisdiction." *Douglas v. E.G. Baldwin & Assocs., Inc.*, 150 F.3d 604, 606 (6th Cir. 1998) (quoting *In re Mooney*, 841 F.2d 1003, 1006 (9th Cir. 1988)), *abrogated on other grounds by Thomas v. Miller*, 489 F.3d 293 (6th Cir. 2007) (internal quotation marks omitted). "[R]emoval statutes are to be strictly construed, and doubts regarding

---

[1] Collectively, Volkswagen Group of America, Inc., and Volkswagen, A.G. will be referred to as "VW Defendants." On February 12, 2015, the parties jointly stipulated that the claims against Volkswagen do Brasil Limitada would be dismissed without prejudice. (Notice Removal Ex. A, DN 1-1).

[2] Larue's reply does not comply with LR 7.1(d), and he failed to seek leave from this Court prior to filing a nonconforming reply. In the interest of full consideration of the issues raised in the pending motions, the Court will nevertheless consider the reply.

the propriety of removal should be resolved in favor of remanding the case to state court." *Smith v. Giant Food, LLC*, 931 F. Supp. 2d 717, 721 (D. Md. 2013) (citation omitted). "[A]ny disputed questions [of] fact and [all] ambiguities in the controlling state law [should be resolved] . . . in favor of the nonremoving party." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (alterations in original) (internal quotation marks omitted) (quoting *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).

1. *Timeliness of Removal*

When VW Defendants removed the case from state court to this Court, more than one year had passed since the commencement of this action. Federal law, however, prohibits the removal of cases in which federal jurisdiction is based on diversity after more than one year has passed since the commencement of the lawsuit. *See* 28 U.S.C. § 1446(c). VW Defendants oppose Plaintiff's motion to remand back to state court on the basis that Larue acted in bad faith by naming KTC Defendants, who are non-diverse defendants, to preclude timely removal. (Defs.' Resp. Pl.'s Mot. Remand 12, DN 14). VW Defendants point to Larue's failure to develop discovery in support of his claims against KTC Defendants and argue that Larue failed to fulfill a continuing obligation to develop and reevaluate his claims. (Defs.' Resp. Pl.'s Mot. Remand 18-23).

In ruling on this motion, the Court must consider the effect of a relatively recent statutory amendment. Effective in 2012, Congress amended 28 U.S.C. § 1446(c) to allow the removal of cases more than one year after commencement when "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing an action."[3] *See* Federal Courts

---

[3] This amendment was based on the equitable exception recognized by the Fifth Circuit in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). *See* H.R. Rep. No. 112-10, at 15, 2011 U.S.C.C.A.N. 576 ("New paragraph 1446(c)(1) adds to the current one-year limitation on

3

Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103(b), 125 Stat. 758, 760-61 (2011) (codified as 28 U.S.C. § 1446(c)(1)). The amendment also clarifies that the statute is procedural in nature and can be waived or equitably tolled. *See Ehrenreich v. Black*, 994 F. Supp. 2d 284, 288 (E.D.N.Y. 2014) ("The amendment confirms that the limitation is procedural, excusable by federal courts upon a proper showing of bad faith.").

This Court has had few opportunities to consider what constitutes bad faith under that statute.[4] *See Taylor ex rel. McNeill v. King*, No. 5:12-CV-1, 2012 WL 3257528, at *4-5 (W.D. Ky. Aug. 8, 2012). As this Court has noted in construing the appropriate standard for bad faith by a plaintiff:

> The Sixth Circuit has not clearly defined the meaning of "bad faith" in the amended statute, however federal courts that have examined the new language agree that the issue is whether the plaintiff engaged in intentional conduct to deny the defendant the chance to remove the case to federal court.

*Hiser*, 2014 WL 6885433, at *4 (citation omitted). As a sister court has stated, "[t]he determination of bad faith is left to the discretion of the district court, but 'the exception to the bar of removal after one year is limited in scope.'" *Bryson v. Wells Fargo Bank, N.A.*, No. 1:16-CV-28, 2016 WL 1305846, at *4 (E.D. Tex. Mar. 31, 2016) (quoting H.R. Rep. No. 112-10, at 15, *reprinted in* 2011 U.S.C.C.A.N. 576).

VW Defendants argue that Larue engaged in bad faith when he failed to actively litigate his claims against KTC Defendants, which prevented VW Defendants from timely removing this

---

removal of diversity actions a limited exception, authorizing district courts to permit removal after the 1-year period if the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action.").

[4] In *Hiser v. Seay*, No. 5:14-CV-170, 2014 WL 6885433 (W.D. Ky. Dec. 5, 2014), this Court held that Volkswagen de Mexico, S.A. de C.V., and Volkswagen Group of America, Inc. had failed to prove fraudulent joinder in support of their argument of bad faith under 28 U.S.C. § 1446(c)(1). *See id.* at *4.

matter to federal court. In their response, VW Defendants generally argue that KTC Defendants were fraudulently joined. As the Sixth Circuit has explained, fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (citation omitted) (internal quotation marks omitted). Fraudulent joinder exists where "it [is] clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . ." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted). Defendants can avoid remand "by demonstrating that the non-diverse party was fraudulently joined." *Probus v. Charter Commc'n, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007) (citation omitted) (internal quotation marks omitted). "However, if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the federal] [c]ourt must remand the action to state court." *Coyne*, 183 F.3d at 494. "[A] claim is colorable 'if the state law *might* impose liability on the resident defendant under the facts alleged.'" *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (citing *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). *See also Alexander v. Elec. Data Sys.*, 13 F.3d 940, 949 (6th Cir. 1994) ("[T]he question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved.").

The standard for fraudulent joinder is similar to that for motions to dismiss under Fed. R. Civ. P. 12(b)(6). Courts analyzing those motions consider only pleadings and attached documents. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). All allegations in the complaint are assumed true. *See Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983). The standard for fraudulent joinder is even more deferential to the plaintiff than motions under Fed. R. Civ. P. 12(b)(6). *See Walker*, 443 F. App'x at 954.

5

Because fraudulent joinder questions the court's jurisdiction rather than the merits of the claim, in analyzing motions to remand for fraudulent joinder courts are empowered to go beyond the pleadings. *Id.* Nonetheless, "even if the district court 'pierces the pleadings' to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential."[5] *Id.* Further, "any contested issues of fact must be construed in the plaintiff's favor." *Id.* However, "[t]he non-moving party's motive for joining the non-diverse party to the lawsuit is 'immaterial to our determination regarding fraudulent joinder.'" *Id.* at 951 (quoting *Jerome-Duncan, Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999)). The party alleging fraudulent joinder bears a heavy burden of persuasion. *See id.* at 953 (citation omitted).

In their response, VW Defendants concede that Larue had colorable claims of negligence and strict liability against KTC Defendants at the outset of this litigation, which undermines any argument of fraudulent joinder. (Defs.' Resp. Pl.'s Mot. Remand 2 n.1, 26 n.9). Kentucky law recognizes that employees of the Kentucky Transportation Cabinet, Department of Highways may be liable in their individual capacities for a failure to perform a ministerial duty relating to highway maintenance. *See Hammers v. Plunk*, 374 S.W.3d 324, 330 n.3 (Ky. App. 2011) (en banc) ("Because the present case involves the maintenance or repair of existing sections of roadway, rather than a decision to erect signs or guardrails on same, such action or inaction may be considered ministerial."); *Estate of Clark ex rel. Mitchell v. Daviess Cty.*, 105 S.W.3d 841, 846 (Ky. App. 2003) (holding that county employees sued in their individual capacities were

---

[5] In this case, the parties invited the Court to consider summary-judgment-type evidence through the numerous exhibits filed relating to the motion to remand and, as discussed herein, the Court has considered those exhibits.

personally liable for any failure to perform a ministerial duty like replacing a stop sign). Thus, Larue had a colorable claim of negligence and strict liability against KTC Defendants and asserting claims against those Defendants did not constitute bad faith. *See Johnson v. Dollar Tree Stores, Inc.*, No. 3:15-cv-706-DJH, 2016 WL 126875, at *2 (W.D. Ky. Jan. 11, 2016) ("The relevant inquiry for a fraudulent joinder claim is whether [the plaintiff] 'had at least a colorable cause of action against' [the alleged fraudulently joined party] in Kentucky state courts." (quoting *Jerome-Duncan, Inc.*, 176 F.3d at 907)).

Contrary to VW Defendants' characterizations of KTC Defendants as token parties, the record reflects that Larue retained two experts to proffer expert testimony relating to the accident and the road conditions: Gary M. Chambers, P.E. ("Chambers"); and Mariusz Ziejewski, Ph.D. ("Ziejewski"). (Pl.'s Reply Mot. Remand 10-12, DN 16; Pl.'s Mot. Remand Exs. 2-3, DN 9-2 to 9-3). As an expert witness, Chambers' specialties include "highway design and highway construction zone issues . . . ." (Pl.'s Mot. Remand Ex. 2, at 1, DN 9-4). Ziejewski is an engineer and professor of engineering at North Dakota State University, and in his curriculum vitae, he notes that he is a "Fully Accredited Accident Reconstructionist, Accreditation Commission for Traffic Accident Reconstruction (ACTAR) #1939." (Pl.'s Mot. Remand Ex. 3, at 1, DN 9-5). Ultimately, as Larue has noted, "Chambers was unable to determine that the roadway violated any controlling guidelines under AASHTO or FHWA and thus, he was not named as an expert." (Pl.'s Mem. Supp. Mot. Remand 9). In contrast, Ziejewski did prepare an expert report and was deposed. (Ziejewski Report, DN 14-10; Ziejewski Dep., Aug. 3, 2016, DN 14-11). Ziejewski testified as follows:

> Q. Doctor, is it fair to say that your report does not express any opinions as to the condition or maintenance of the roadway where this accident occurred?
> A. That's correct.

7

> Q. Have you been asked to form any opinions as to the condition or maintenance of the roadway where the accident occurred?
> A. Not specifically.
> Q. Do you have any opinions that you have formed as to the condition or maintenance of the roadway where the accident occurred?
> A. Well, I do. Actually I did express part of my opinion at the time—at the beginning of the deposition when I was asked the question as far as what was the reason or the cause of the—of the—of the event, the entire event.
>
> And to me, the event is the rollover, and I mentioned that the interaction of the right front wheel with the—with the lip or the rise surface of the—of the road is—is definitely part of the whole issue that will result in lateral forces on the tire. And when you try to steer, you feel the resistence [sic]. If you feel resistance, you put a little bit more force in—on the steering wheel, and this [sic] what causes [sic] the vehicle to shoot to the left.
> Q. So are you referring to your comment that there was a drop-off between the paved portion of the road and the unpaved portion of the road?
> A. Correct.

(Ziejewski Dep. 94:6-95:11). As reflected by this testimony, Dr. Ziejewski did express an opinion connecting the condition of the roadway to the rollover such that a failure to maintain the shoulder in conformity with a ministerial duty could have sustained the claims against KTC Defendants. *See Hammers*, 374 S.W.3d at 330 n.3. Thus, the record does not support VW Defendants' contention that Larue did not attempt to develop expert discovery to support his claims against KTC Defendants. VW Defendants specifically criticize Larue's failure to seek fact discovery against KTC Defendants. Without some proof that the shoulder was negligently maintained, however, there was no need to explore the claims against KTC Defendants.

Further, there is at least one important strategic reason for naming KTC Defendants as parties to this action. Under Kentucky law, a jury is to apportion fault among the parties to a lawsuit. *See* KRS 411.182(1). As a sister court has explained:

> As its name implies, apportionment spreads the liability for a [plaintiff's] claims among the tortfeasors based on their relative fault. Liability under [KRS] 411.182 is several only, so one tortfeasor is never on the hook for the entire amount unless the jury apportions the entire fault to that tortfeasor. Since the statute requires the factfinder to assign a "percentage of fault" to all the parties to a claim, codefendants do not need to raise crossclaims for apportionment. But where a

> party is not named as a defendant in the original complaint, a named defendant can bring a third-party complaint against the unnamed party to ensure that a share of the total liability is apportioned to them.

*Stanford v. United States*, 948 F. Supp. 2d 729, 744 (E.D. Ky. 2013) (internal citations omitted) (internal footnote omitted) (citation omitted). Thus, the failure to name the KTC Defendants could have subjected Larue to the "empty chair defendant" conundrum had they not been sued and VW Defendants asserted a third-party complaint and were able to establish some breach of a ministerial duty against KTC Defendants. (Pl.'s Reply Mot. Remand 14).

Although VW Defendants seek to characterize as bad faith Larue's failure to expedite dismissal of his claims against the non-diverse defendants within one year, it was up to those defendants to move for summary judgment—not Larue. Larue cannot be blamed for KTC Defendants' failure to seek dismissal within one year of the commencement of this action.

The summary judgment standard in Kentucky courts also would certainly influence this aspect of a plaintiff's litigation strategy. The Kentucky Supreme Court has pronounced that summary judgment in Kentucky courts is only warranted when "it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). While the court has since backtracked from that pronouncement by noting that "[i]mpossible is meant in 'a practical sense, not in an absolute sense," the Kentucky summary judgment standard is still recognized as being more difficult to satisfy than its federal counterpart. *Dick's Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 894 n.2 (Ky. 2013) (quoting *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992)). The Kentucky Supreme Court has also "cautioned trial courts not to take up these motions prematurely and to consider summary judgment motions 'only after the opposing party has been given ample opportunity to complete discovery.'" *Blankenship v.*

*Collier*, 302 S.W.3d 665, 668 (Ky. 2010) (quoting *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988)). It is difficult to say in this instance that Larue's failure to voluntarily dismiss KTC Defendants within one year, before discovery was complete, amounted to bad faith.

Another aspect to the lapse of time before dismissal of KTC Defendants in the state action is that litigation is much less structured in state versus federal court. In this forum, the Court requires the parties to confer and submit a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f) after the filing of the answer. The Court then holds a scheduling conference pursuant to Fed. R. Civ. P. 16 during which the Court sets discovery and dispositive motion deadlines. In Kentucky courts, such procedures are not followed as a matter of course. Without a looming trial date or court-imposed discovery deadlines, state court cases may linger through the discovery phase. That is especially true in a complex case like this where it would be unusual to obtain a summary judgment within one year of commencement given the amount of discovery necessary and Kentucky trial courts' general reluctance to dismiss cases before discovery is complete.

From the Court's perspective, the procedural history of this case undermines a finding of bad faith. Roughly nine months after the state suit was filed, on August 10, 2015, the Warren Circuit Court held a hearing and it set the case for trial on August 9, 2016. (Notice Removal Ex. 1-State Court File Part 2, at 92-96, DN 1-2). In that order, the court set the discovery deadline for June 27, 2016, which was approximately twenty months after the lawsuit was filed. Subsequently, the parties—including VW Defendants—requested that the trial be delayed until February 2017 and that discovery deadline be extended until December 15, 2016. (Notice Removal Ex. 1-State Court File Part 4, at 44-48, DN 1-4). Thus, VW Defendants tacitly

consented to the extension of the discovery deadline which unquestionably contributed to the delay in KTC Defendants' motion for summary judgment. It seems wholly inappropriate to now blame the prolonged state court process on Plaintiffs and to characterize their actions as bad faith.

VW Defendants urge this Court to apply the analysis used by a sister court in *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225 (D.N.M. 2014), which evaluates bad faith under 28 U.S.C. § 1446(c)(1) through the following two steps:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence already in the defendant's possession that establishes that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

*Id.* at 1262-63. Thus far, this Court has evaluated claims of bad faith under the revised version of 28 U.S.C. § 1446(c) by analyzing whether the non-diverse party was fraudulently joined or was not dismissed to preclude timely removal. *See Taylor*, 2012 WL 3257528, at *4-5; *Hiser*, 2014 WL 6885433, at *4. This Court is disinclined to deviate from the approach it has utilized in past cases, and the Sixth Circuit has not relied on the analysis proposed by *Aguayo*. *See Dutchmaid Logistics, Inc. v. Navistar, Inc.*, No. 2:16-cv-857, 2017 WL 1324610, at *3 (S.D. Ohio Apr. 11, 2017) ("As Plaintiffs point out, the Sixth Court has ruled on cases regarding the bad faith exception after *Aguayo* was decided, and has not relied on this test. As a result, the Court finds it inappropriate to adopt the test now."). It is noteworthy, however, that even the *Aguayo* court recognized that because plaintiffs are "masters of their complaints," "[t]here is

nothing wrong with plaintiffs having a preference for state court, nor is there anything inherently invidious or "bad faith" about using deliberate tactics to defeat federal jurisdiction." *Aguayo*, 59 F. Supp. 3d at 1273. Thus, *Aguayo* implicitly accepts the legitimacy of asserting claims against a non-diverse potential tortfeasor for some strategic benefit unrelated to defeating removal, such as the "empty chair defendant" consideration cited by Larue. In the end, the *Aguayo* analysis seems inappropriate because it would reverse the presumption in favor of remand in cases like this where the plaintiff has a colorable claim against a non-diverse party, but cannot garner expert proof to support the claim and the "diversity spoiler" does not seek dismissal before the one-year period expires.

Even if this Court were to apply the analysis used in *Aguayo*, the Court would still conclude that KTC Defendants were not fraudulently joined. Larue actively litigated his claims against KTC Defendants by retaining two experts to evaluate the potential claims against those Defendants, as discussed above. There is no evidence to support the contention that Larue kept KTC Defendants in the case solely out of desire to keep the case in state court. VW counsel's naked assertions to the contrary do not suffice. *See Heron*, 2015 WL 4898566, at *3.

This Court's decision in *Hiser* is clearly distinguishable. In *Hiser*, the plaintiffs stated that "they 'admittedly decided to continue the litigation with all parties in the case until the one-year time period passed' due to the 'likelihood of attempted removal.'" *Hiser*, 2014 WL 6885433, at *4 (citation omitted). Based on the plaintiff's admission, the Court concluded that the bad faith exception of 28 U.S.C. § 1446(c)(1) permitted the belated removal of the case to federal court more than twenty-one months after the action was filed in state court. No such admission exists in the case *sub judice*.

The present case is more akin to the Court's decision in *King*. In stark contrast to *Hiser*, this Court noted in *King* that there was no evidence that the tactical decisions of the plaintiffs were "employed specifically to defeat diversity jurisdiction." *Id.* at *5. As a result, the Court refused to apply the bad faith exception more than five years after the commencement of the action. *See id.*

As this Court has stated in addressing a claim of fraudulent joinder, "[p]laintiffs frequently file cases with a good faith belief that they have a meritorious claim. After sifting through the facts, however, it sometimes becomes apparent that the facts or law are not in their favor. This does not, however, mean that the plaintiff necessarily fraudulently joined the dismissed party." *Hardy v. Ajax Magnathermic Corp.*, 122 F. Supp. 2d 757, 760 (W.D. Ky. 2000). Further, having asserted a colorable claim as in the instant case, a plaintiff's failure to proactively seek dismissal within one year after striking out on the development of expert proof does not equate to bad faith

For the reasons outlined above, the Court concludes that VW Defendants have not established that KTC Defendants were not fraudulently joined to preclude removal of this action that Larue acted in bad faith by failing to dismiss his claims against KTC Defendants within one year of the filing of this action. Accordingly, the bad-faith exception to the one-year limitation on the removal of cases to federal court is inapplicable, and the Court will remand this matter to Warren Circuit Court.

### 2. *Request for Attorneys' Fees and Costs*

Larue has also moved for an award of attorneys' fees due to improper removal pursuant to 28 U.S.C. § 1447(c). (Pl.'s Mem. Supp. Mot. Remand 9-10). As the Supreme Court has recognized, however, an award of attorneys' fees under that subsection is discretionary, and there

13

is no presumption that such award should be made. *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136-37 (2005). The Supreme Court has instructed trial courts to consider "the reasonableness of the removal" and to only award attorneys' fees "where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

While the Court ultimately concludes that removal was improper, the Court does not question the good faith of Defendants in removing this action. While Plaintiff argues that the removal delayed the litigation and increased litigation costs, it does not appear to the Court that those were the motives for the removal of the action to this forum. Likewise, it does not appear that Defendants' arguments were sufficiently weak to award attorneys' fees and costs in this case. *See Johnson v. Dollar Tree Stores, Inc.*, No. 3:15-CV-706-DJH, 2016 WL 126875, at *3 (W.D. Ky. Jan. 11, 2016); *Cua v. Pilot Travel Ctrs., LLC*, No. 11-76-C, 2011 WL 1832152, at *2 (W.D. Ky. May 12, 2011). Accordingly, the Court will deny Plaintiff's request for attorneys' fees and costs.

### B. Defendants' Motion for Leave to File Sur-Reply

Defendants have moved for leave to file a sur-reply, which they attached as an exhibit to their motion. This motion is granted.

### C. Defendants' Motion for Oral Argument

Finally, Defendants have moved for oral argument. Because the Court finds that oral argument is unnecessary to address Plaintiff's Motion to Remand, this motion is denied.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion to Remand (DN 9) is **GRANTED** but the request for attorneys' fees and costs is **DENIED**, and this case is **REMANDED** to Warren Circuit Court;

14

2. Defendants' Motion for Leave to File Sur-Reply (DN 18) is **GRANTED**; and

3. Defendants' Motion for Oral Argument (DN 17) is **DENIED**.

4. The Clerk shall strike this case from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**

May 26, 2017

cc: counsel of record
Warren Circuit Court Clerk (Civil Action No. 14-CI-01202)